## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FLOYD E. LYTES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-0402 (RMC)** |
| ) | |
| **D.C. WATER AND SEWER** ) | |
| **AUTHORITY,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION</u>

Floyd Lytes, a former employee of the District of Columbia Water and Sewer Authority ("WASA"), sues his former employer for breach of a collective bargaining agreement and discrimination due to a work-related injury. WASA asserts that the Court has no jurisdiction over Mr. Lytes's claims of breach of contract, wrongful discharge, gender discrimination, or retaliation and moves to dismiss Counts I, III, IV and VI of the Complaint. The Court agrees.

### I. BACKGROUND

WASA is an independent authority, with "a separate legal existence within the District government." D.C. Code § 34-2202.02(a). During his employment, the terms and conditions of Mr. Lytes's work with WASA were governed by the Master Agreement on Compensation and Working Conditions ("Master Agreement"), a collectively-bargained contract between WASA and the American Federation of Government Employees ("AFGE"), the American Federation of State, County and Municipal Employees, and the National Association of Government Employees. Mr. Lytes was a member of Local 631, AFGE, and was covered by the Master

Agreement, working as a Waste Water Treatment Plant Operator.

Mr. Lytes sustained an injury to his back while working in May 2000.  After back surgery and physical therapy, he attempted to return to work "with [a] few restrictions."  Compl. ¶ 17.  He met with Tonya Deleon, WASA's Risk Management Supervisor, on January 3, 2002, and sought reinstatement to light duty.  "Ms. Deleon informed Mr. Lytes that light duty was not available."  *Id.* ¶ 18.  Mr. Lytes took his request to Barbra Melton, President of AFGE Local 631, but Ms. Melton told him to "just stay on Worker's Compensation and receive the money."  Affidavit of Floyd E. Lytes ("Lytes Aff.") ¶ 4.  Mr. Lytes underwent a second surgery on his back in the spring of 2002.  After a recovery period, Mr. Lytes attempted again to return to work on September 3, 2003, when he met with Ms. Deleon and submitted medical documents to her.  *Id.* ¶ 4; *see* Compl. ¶¶ 22-24.  Again, his doctor had released him to return to work "with few restrictions."  Compl. ¶ 24.  Again, Ms. Deleon told Mr. Lytes that there was no light duty available and told him to go home and continue to receive workers' compensation benefits.  *Id.* ¶ 25.

On December 16, 2003, Mr. Lytes received a letter from WASA that was a notice of termination from his position because he was medically disqualified.  The letter gave Mr. Lytes a 60-day period in which to find another position for which he was qualified in order to remain a full-time employee at WASA.  Mr. Lytes immediately went to the WASA main building to find Ms. Deleon and Ms. Melton.  Ms. Deleon was not available, but he did find Ms. Melton.  When he showed Ms. Melton the notice of termination, she responded that he "would not be fired and that [he] should be happy [he was] getting paid."  Aff. ¶ 7.  When Mr. Lytes again asked about light duty, Ms. Melton told him that "WASA does not have light duty."  *Id.*  Mr. Lytes reports that "Ms. Melton had previously told me the same thing for the last (4) four years – WASA could not fire me – I was

still getting paid.  I had no reasons to believe that Ms. Melton would do anything different." *Id.*

Although Mr. Lytes attempted to find other jobs at WASA, none for which he was qualified came open.  On March 27, 2004, he received a letter of dismissal from WASA. *Id.* ¶ 8.  Mr. Lytes attempted to contact Ms. Melton, but her voice mailbox was constantly full and he was unable even to leave her a message.  He states that he left her a message on March 29, 2004, telling her that he wanted to file a grievance and that he needed to take action.  He forwarded that same message to Ms. Melton by way of some co-workers who attended the next AFGE monthly meeting. *Id.* ¶¶ 9-10.  His friends assured him that they had conveyed the message to Ms. Melton but she never called Mr. Lytes. *Id.*  Thereafter, Mr. Lytes called Chester Hunter, the vice president of the Blue Plane Unit, four times; he never received a return phone call. *Id.* ¶ 11.  After receiving no responses from Ms. Melton or Mr. Hunter, Mr. Lytes filed an equal employment opportunity ("EEO") claim. *Id.* ¶ 13.

## II. LEGAL STANDARDS

### A. Jurisdiction

Pursuant to 28 U.S.C. § 1331(a), the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  For purposes of this statute, a claim "arises under" federal law in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983); *Quarles v. Colorado Sec. Agency, Inc.,* 843 F.2d 557, 558 (D.C. Cir. 1988).  Mr. Lytes's complaint alleges that WASA refused to accommodate his disability and wrongfully terminated him in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12.101 (2000), the Rehabilitation Act of 1973, 29 U.S.C. § 791 (2000), and Title

-3-

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2005). Because these claims arise under the laws of the United States, this court has federal question jurisdiction under § 1331. *See E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 623 (D.C. Cir. 1997).

### B. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court possesses jurisdiction over his claims. *See Fitts v. Federal Nat. Mortg. Ass'n*, 44 F. Supp. 2d 317, 320 (D.D.C. 1999), *aff'd*, 236 F.3d 1 (D.C. Cir. 2001); *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002). In reviewing a motion to dismiss under Rule 12(b)(1), the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. These allegations, however, "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 2d, § 1350). The Court may consider information outside the pleadings to determine its jurisdiction. *See Lipsman v. Sec'y of Army*, 257 F. Supp. 2d 3, 6 (D.D.C. 2003).

For the court to grant a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must "appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). The threshold inquiry in resolving a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984). Just as with a

motion to dismiss pursuant to Rule 12(b)(1), "the court must accept as true all [of the plaintiff's] well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff[]." *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999).  Although the court must construe the complaint in the light most favorable to the non-moving party, it "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276.  In addition, the court need not accept the plaintiff's legal conclusions as true. *See Alexis*, 44 F. Supp. 2d at 337.

### III. ANALYSIS

The Complaint contains multiple counts, all but one of which are covered by WASA's motion to dismiss.  Count I alleges that WASA breached the Master Agreement; Count II alleges that WASA violated the Americans with Disabilities Act, 42 U.S.C. § 12.101 (2000) ("ADA"), by failing to accommodate Mr. Lyte's request for a light duty assignment; Count III alleges that WASA discriminated against Mr. Lytes based on his gender; Count IV alleges that WASA wrongfully terminated Mr. Lytes; and Count VI alleges that WASA retaliated against him and denied him a light duty assignment because he filed for workers' compensation benefits.  There is no Count V.  WASA moves to dismiss all but Count II.

### A.  Count I: Breach of the Master Agreement

Count I alleges, "By refusing Mr. Lytes's right to return to work as a qualified person with a disability, and failing to comply with his request for a reasonable accommodation, Defendant Deleon breached [Article 13, Section A of] the bargaining contract."  Compl. ¶ 39.[1]  The Court does

---

[1] Article 13, Section A of the Master Agreement provides that if "it is determined that the employee can perform the essential functions of the position, he/she shall return to work.  If it is determined that the employee is a qualified individual with a disability, the Authority shall

not have jurisdiction over this claim, which is subject to the grievance/arbitration provisions of the Master Agreement.

It is well established that "employees must avail themselves of grievance and arbitration procedures provided for in a collective bargaining agreement before filing suit for breach of the collective bargaining agreement." *Am. Postal Workers Union v. United States Postal Serv.*, 755 F. Supp. 1076, 1078 (D.D.C. 1989); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580-81 (1960); *Suzal v. United States Information Agency*, 32 F.3d 574, 584 (D.C. Cir. 1994); *Summers v. Howard Univ.*, 127 F. Supp. 2d 27, 30 (D.D.C. 2000).

While recognizing this general precept, Mr. Lytes argues that it is inapplicable because a grievance under the Master Agreement was not a viable avenue for him to pursue. He cites numerous cases that stand for the proposition that there is no requirement to exhaust remedies if the attempt would be futile. *See Jordan v. Washington Metro Area Transit Authority*, 548 A.2d 792, 796-797 (D.C. 1988). Asserting that "[t]he inactions of both Ms. Melton and Ms. Deleon spoke volumes about the worthiness of the [Master Agreement] grievance process," Mr. Lytes argues that he "should not and is not required to exhaust administrative remedies if they are 'obviously useless.'" Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp.") at 4 (citing *Barnett v. D.C. Dept. of Employee Servs.*, 491 A.2d 1156, 1162 (D.C. 1985) ("[J]udicial economy is not served by requiring a claimant to go through obviously useless motions in order to preserve [his] rights.") (internal quotations omitted).

Mr. Lytes's arguments would be more persuasive if the Master Agreement required

---

comply with the reasonable accommodation requirements of the Americans with Disabilities Act of 1990 (ADA)." Defendant's Motion to Dismiss ("Def.'s Mot."), Ex. A(1) at 4.

either AFGE or WASA to approve a grievance before it could be filed.  It does not.  Section F of Article 58 of the Master Agreement specifies that "[e]ither an employee *or* the Union may raise a grievance.  If raised by an employee, the Local Union may associate itself with the grievance at any time if the employee so desires."  Def.'s Mot., Ex. A(1) at 8 (emphasis added); s*ee also id.* at Article 58, Section C.1 ("A grievance of a personal nature requires the signature of the aggrieved employee at Step 2 of this procedure, even if the grievant is represented by his/her Local Union.  In the case of an individual grievant proceeding without Local Union representation, the Local Union must be given an opportunity to be present and to offer its views at any meeting held to adjust the grievance.").  This provision guarantees that an employee can control his or her own grievance process at WASA, starting from filing a grievance on his or her own and continuing to pursue the grievance without AFGE, unless the employee agrees that the AFGE can associate itself.

There is no doubt that Mr. Lytes's complaint that he should be reinstated to light duty would constitute "a claim of any alleged violation of this Agreement or any alleged misapplication or misinterpretation of Personnel policies and regulations that affect terms and conditions of employment," Def.'s Mot., Ex. A(1) at 6, and would thus be subject to grievance/arbitration.  Inasmuch as he could have filed and pursued a personal grievance without reliance upon AFGE, Mr. Lytes's attempts to shift the blame for his inaction to the Local Union fail.

Mr. Lytes suggests a dynamic between Ms. Deleon and Ms. Melton, as if they were the decision-makers on an employee grievance.  *See* Pl.'s Opp. at 4 ("These two individuals, who represent WASA and are the essential agents to this Agreement, were responsible for the administrative remedies of the [Master Agreement] and *did absolutely nothing*.").  This argument is without merit.  Under the Master Agreement, an employee can individually take his or her

grievance, "with or without his/her Local Union representative," through the three steps of the grievance process before arbitration. Def.'s Mot., Ex. A(1) at 8. In a grievance without AFGE participation, Step 1 involves the employee and his immediate supervisor discussing an oral grievance; Step 2 involves the employee and the appropriate department director addressing a written grievance; and Step 3 involves the employee and the General Manager or his/her designee addressing the written grievance. *Id.* at 8-9. Only at Step 4, if the grievance remains unsettled, is it necessary to have the Local Union request arbitration. Mr. Lytes does not allege that Ms. Deleon was his supervisor, his department director, or the General Manager, or that she played any role in labor relations at WASA.

In light of these facts, Mr. Lytes has failed to demonstrate that he could not have filed a grievance and pursued it on his own, at least through Step 3, towards a possible grievance adjustment to his satisfaction. Nothing prevented him from such a course of action since AFGE's agreement and/or participation was not necessary. *See Linke v. Assoc. of Flight Attendants*, 2002 WL 31818231, at *2 (D.C. Cir. Dec. 16, 2002) (finding that plaintiff was not prevented from exhausting his contractual remedies where contract allowed him to pursue his grievance without union participation). In addition, Mr. Lytes has not demonstrated "the certainty of an adverse decision or indications that pursuit of administrative remedies would be clearly useless." *UDC v. Board of Trustees,* 56 F.3d 1469, 1475 (D.C. Cir. 1995). It is purely speculative to guess whether it would have been a futile act for Mr. Lytes to file a personal grievance because he did not put the grievance procedure to the test. *See Perry v. Midstates Indep. Union*, 2001 WL 1173238, at *3 (7th Cir. Sept. 28, 2001).

Indeed, AFGE owed Mr. Lytes a duty of fair representation. *See Marquez v. Screen*

*Actors Guild, Inc.*, 525 U.S. 33, 44 (1998) ("When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty . . . to represent all members fairly."). While his interactions with Ms. Melton suggest that the Local Union President did not think that WASA had breached the contract by failing to provide light duty to Mr. Lytes, Ms. Melton's opinion was unimportant because Mr. Lytes could have pursued his own grievance. If, after Step 3, the Local Union had to decide whether to take Mr. Lytes's grievance to arbitration, the Union's analysis of its duty of fair representation may well have changed inasmuch as Mr. Lytes could no longer proceed on his own. Thus, the disinterest of the Union President was neither limiting nor necessarily permanent, but Mr. Lytes's failure to file and pursue his own grievance makes it irrelevant.

Mr. Lytes was bound by the terms of the Master Agreement to pursue any grievance under Article 58. He admittedly failed to do so. Accordingly, this Court lacks jurisdiction over Mr. Lytes's breach of contract claim.

### B. Count III: Gender Discrimination

To bring a suit under Title VII, a plaintiff must first file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or a state or local agency. *See Rann v. Chao*, 346 F.3d 192, 195-96 (D.C. Cir. 2003); *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). Any lawsuit must be "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907 (internal citation omitted). "A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the [Title VII] administrative process." *Id.* Mr. Lytes's charge to the EEOC claimed that WASA discriminated against him in violation of the ADA. He did not assert

discrimination under Title VII, much less discrimination based on his gender. WASA asserts that

Count III must therefore be dismissed. The Court agrees.

Through counsel, Mr. Lytes acknowledges the prevailing legal standards, but he

contends that his complaint does not exceed the scope of his charge. Specifically, he argues:

> Plaintiff's complaint for disability discrimination included the factual
> assertion that his employer was engaging in discriminatory actions due to
> his disability. He further explain[ed] in the petition that he was denied light
> duty positions, and that he was aware that there were in fact light duty
> functions that he could perform. It would have been a reasonable inquiry
> of any EEO investigation to establish what person's [sic], if any, were
> performing the light duties. If this [were] affirmed, and if as he asserts, they
> were all female, a gender issue reasonably arises [sic].

Pl.'s Opp. at 6. The Court must disagree with this analysis. The purpose of an EEO charge is to put

an employer on notice of the discrimination charged by its employee and to guide the relevant agency

in its investigation. While it is normal for untrained employees to file EEO charges – and thus, the

permissible scope of the charge and lawsuit are not limited to the precise words used – even

untrained employees must identify the form of discrimination they believe has occurred. Mr. Lytes

identified disability discrimination and not gender discrimination. The only connection between the

two that he can now formulate is the possibility that an EEO investigator would deduce that gender

discrimination might be at play because, allegedly, those WASA employees who are allowed light

duty assignments are women. Were that so, the EEO investigator would have had to solicit a new

charge to pursue gender discrimination; the two theories of discrimination arise under separate laws

and are too dissimilar to be covered in a single ADA charge.

Because Mr. Lytes's EEO charge did not allege gender discrimination and because

gender discrimination is not like, or reasonably related to, his charge of discrimination based on his

disability, he has failed to exhaust his administrative remedies on his gender charge and this Court is without jurisdiction to hear it. Count III will be dismissed.

### C. Count IV: Wrongful Termination

Count IV of the Complaint alleges that on December 16, 2003, Mr. Lytes "was determined to be medically disqualified from his position as a Waste Water Treatment Plant Operator with WASA," Compl. ¶31, and that WASA failed to offer him any jobs for which he was qualified. *Id.* ¶¶ 60-61. Although presented as a common law wrongful termination claim, Mr. Lytes is fundamentally alleging that he was terminated in violation of Article 13 of the Master Agreement. *See* Compl. ¶ 56 (alleging that WASA found him medically disqualified), Compl. ¶ 58 (alleging that he was medically qualified to return to work); Compl. ¶ 60-61 (WASA failed to offer him a job for which he was qualified). In Article 13, WASA and the AFGE agreed that:

> If it is determined that the employee is permanently unable to perform the essential functions of the position, [WASA] shall provide the employee with a sixty (60) calendar day notice of termination. During that time, the employee may use any annual or sick leave, or may be placed in a leave without pay status. In addition, [WASA] shall determine: (1) if there are any options or alternatives that would enable the employee to perform the essential functions of the position; (2) if there is another vacant position for which the employee meets the minimum qualifications and to which he/she can be transferred . . . .

Def.'s Mot., Ex. A(1) at 4. Mr. Lytes was covered by a collective bargaining agreement that addressed precisely the procedures for employees with medical disabilities and he was as much bound to its terms as was WASA. His remedy for the alleged failure to offer him a job for which he was medically qualified was to file a grievance, pursuant to the terms of the Master Agreement. For the reasons stated earlier, he cannot pursue a lawsuit in this Court when he has failed to timely

grieve WASA's actions.[2]

Because Count IV is, in actuality, a claim for breach of the Master Agreement and Mr. Lytes failed to exhaust his contractual and administrative remedies, it must be dismissed.

### D.  Count VI: Retaliation for Workers' Compensation Claim

Count VI of Mr. Lytes's complaint alleges that WASA retaliated against him and refused to accommodate his request for a reasonable accommodation of his disability because he filed a claim for benefits under the District of Columbia Workers' Compensation Act.  This claim must fail.

It is well established that in the District of Columbia, the Workers' Compensation Act provides the *exclusive* remedy for claims arising out of work place injuries, including claims of retaliation for filing a claim under the Act.  *See* D.C. Code § 32-1504(a); *see also Tatum v. Hyatt Corp.*, 918 F. Supp. 5, 8 (D.C. 1995); *Nolting v. Nat'l Capital Group, Inc.*, 621 A.2d 1387, 1388 (D.C. 1993).  The Workers' Compensation Act makes it unlawful to "discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer . . . ."  D.C. Code § 32-1542.  Moreover, the Act provides a specific remedy for violations of this particular section of the D.C. Code.  *See id.* (noting that an employee discriminated against in violation of  § 32-1542 "shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such

---

[2]  Had Mr. Lytes filed a grievance, any further dispute would have been heard by the Public Employee Relations Board ("PERB"), which has exclusive jurisdiction over disputes involving grievances under a collective bargaining agreement for employees of the offices, agencies, departments and instrumentalities of the District government.  *Cooper v. AFSCME*, 656 A.2d 1141, 1142 n. 1 (D.C. 1995); *District of Columbia v. Thompson*, 593 A.2d 621, 626-27 (D.C. 1991).  "[W]here PERB has jurisdiction over a claim, a litigant cannot bypass PERB's jurisdiction by bringing the same action as a common law claim."  *Cooper*, 656 A.2d at 1144.

discrimination"). This remedy is exclusive. *See Nolting*, 621 A.2d at 1387 (holding that there was no basis to conclude that "in enacting the provision barring retaliatory discharge, the [District of Columbia] contemplated that any relief would be available for its violation apart from that expressly provided for" in the Workers' Compensation Act).

Accordingly, because the District of Columbia Workers' Compensation Act provides the exclusive remedy for alleged retaliation and Mr. Lytes has not pursued his administrative remedies under the Act, the Court will dismiss Count VI of the Complaint.

## IV. CONCLUSION

The Court will grant WASA's motion for partial dismissal of the Complaint. For the reasons discussed above, Counts I, III, IV and VI of Mr. Lytes's complaint will be dismissed. There is no Count V so only Count II, which alleges a violation of the Americans with Disabilities Act, remains. A scheduling conference will be set as soon as the Court's schedule permits.

A separate order accompanies this memorandum opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: March 30, 2006.